IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CINDY G. SCARBROUGH,  *

    Plaintiff,  *

vs.  *

                            CASE NO. 4:10-CV-33 (CDL)

COLUMBUS CONSOLIDATED  *
GOVERNMENT,
                                   *

    Defendant.
                                      *

O R D E R

Plaintiff Cindy Scarbrough ("Scarbrough") claims that her former employer, Defendant Columbus Consolidated Government ("CCG"), terminated her employment because CCG perceived her to be an alcoholic. Scarbrough alleges that CCG's actions constitute discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). Scarbrough also contends that CCG violated her right to privacy under the Georgia Constitution by disclosing her private medical information. Presently pending before the Court is CCG's Motion for Summary Judgment (ECF No. 18). For the following reasons, CCG's motion is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

In support of its motion for summary judgment, CCG submitted a statement of material facts ("CCG's SMF") in accordance with Local Rule 56. Def.'s Statement of Material Facts, ECF No. 19 [hereinafter CCG's SMF]. Scarbrough was not represented by counsel when CCG filed its motion for summary judgment and SMF, and the Court notified her of the need to respond to CCG's motion for summary judgment and SMF. *See* Order Notifying Plaintiff of Her Right to Respond, ECF No. 20. Scarbrough obtained representation by the time she filed her response to CCG's motion for summary judgment. Scarbrough, however, failed to respond to CCG's SMF. Therefore, in accordance with Local Rule 56, the facts in CCG's SMF are deemed admitted. *See* M.D. Ga. Rule 56.

Scarbrough's failure to respond to CCG's statement of material facts does not, standing alone, mandate summary judgment by default in favor of CCG. The Court has reviewed the citations contained in CCG's SMF to "determine [that] there is, indeed, no genuine [dispute] of material fact." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (internal quotation marks omitted). The evidence, viewed in light most favorable to Scarbrough, reveals the following.[1]

## I. Scarbrough's Work and Disciplinary History at CCG

Scarbrough started working for CCG in 1983, and she held various positions in several departments over the years. *See* Scarbrough Dep. 19:6-11, 21:6-8, 22:7-14, 25:8-26:14, ECF No. 27 (outlining Scarbrough's CCG employment history). Ultimately, Scarbrough worked as an administrative technician in the Solid Waste Recycling Division of CCG's Public Services Department. *Id.* at 27:18-21, 28:7-21. During the timeframe relevant to this

---

[1] In her response to CCG's summary judgment motion, Scarbrough relies on a determination by the Equal Employment Opportunity Commission ("EEOC") that CCG terminated her because of its perception that she had a disability, in violation of the ADA. Even if the determination were properly before the Court—which it is not, *see Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008)—the EEOC finding would not be dispositive of the pending summary judgment motion because the Court is required to conduct its own review of Scarbrough's claims. *See Kincaid v. Bd. of Trs.*, 188 F. App'x 810, 817 (11th Cir. 2006) (per curiam) (concluding EEOC determination did not create genuine dispute of material fact because "the [court] had to conduct a *de novo* review of the claims").

action, DeAnn Smith was Scarbrough's immediate supervisor. Def.'s SMF Ex. B, Smith Aff. ¶ 4, ECF No. 19-2.[2]

The record reveals that CCG disciplined Scarbrough multiple times over the years for absenteeism and other problems. In 1999, Scarbrough's supervisor recommended that she be permanently dismissed based on excessive absenteeism. Scarbrough Dep. 47:17-48:5; Scarbrough Dep. Ex. 1, Letter from J. Anderson to C. Dubois, Apr. 6, 1999.[3] Scarbrough agreed to several conditions for continued employment in order to keep her job with CCG. Scarbrough Dep. Ex. 3, Letter from R. McKee to C. Dubois, Apr. 13, 1999.

Scarbrough subsequently received written counseling from Smith in 2006 regarding: (1) excessive use of personal time off, (2) derogatory comments about her hours of work, (3) inability to follow the instructions of supervisors without questioning or second-guessing the instructions, and (4) unprofessional behavior in the office. Scarbrough Dep. Ex. 29, Letter from D. Ivey to C. Scarbrough, Dec. 29, 2006. Smith warned Scarbrough that "[i]f improvements are not made, stronger disciplinary action will be taken." *Id.* at 2. Smith noted, however, that "I

---

[2] DeAnn Smith's name has changed, and she is referred to as DeAnn Hill and/or DeAnn Ivey in portions of the record. It is undisputed that DeAnn Smith is the same person as DeAnn Hill and DeAnn Ivey.

[3] Plaintiff's name has changed, and she is referred to as Cindy Dubois in portions of the record. It is undisputed that Cindy Scarbrough is the same person as Cindy Dubois.

4

trust you will have no problem in making the appropriate changes in your behavior to ensure that you meet these standards. You have proven in the past that you are highly capable of performing your duties." *Id.* Although Scarbrough complained to the Director of Public Services that other employees failed to provide accurate documentation for their absences and that she was being unfairly punished, *see* Scarbrough Dep. Ex. 31, Letter from C. Scarbrough to R. Riggs, Jan. 12, 2007, the Director's review of each employee's timesheets did not substantiate Scarbrough's claims, *see* Smith Aff. ¶ 7.

In August 2007, Scarbrough continued to cause problems at work. Smith verbally counseled Scarbrough because of her excessive use of the telephone for personal calls and being loud and disruptive in the office. Smith Aff. ¶¶ 14-16; Smith Aff. Ex. 4, Memo for Record, Aug. 3, 2007, ECF No. 19-2. Several weeks later, Scarbrough was suspended for one day without pay due to: (1) excessive absences, (2) leaving work without completing work orders or the necessary paperwork for processing new employees, (3) failing to make her supervisors aware of the work she did not complete, and (4) her filing was several months behind. Smith Aff. Ex. 6, Employee Disciplinary Record, Aug. 21, 2007, ECF No. 19-2. Smith told Scarbrough that she was being suspended because the numerous counseling sessions had not proven effective. *Id.* Smith also warned Scarbrough that if she

5

failed to make improvements immediately, stronger disciplinary action would be taken. *Id.*

Scarbrough's excessive absenteeism continued. As a result, CCG placed Scarbrough on a six month probationary period in March 2008. Scarbrough Dep. Ex. 10, Employee Disciplinary Record, Mar. 31, 2008. While an employee at CCG is on probation in conjunction with a disciplinary action, any violation of CCG's rules and regulations may result in dismissal. Scarbrough Dep. 62:16-20; Scarbrough Dep. Ex. 4, Department of Public Services: Rules and Regulations § 4.

Scarbrough received an overall satisfactory rating on her 2007-2008 performance review. Scarbrough Dep. Ex. 11, Non-Management Employee Performance Review, Review Period May 17, 2007 to May 17, 2008. Scarbrough received ratings of "below expectations" in several categories, including: (1) the "Work Production Quality/Quantity" category due to her "excessive absenteeism," (2) the "Reliability and Punctuality" category because of her excessive amount of leave and need for improvement in taking personal time off, and (3) the "Communications" category because she needed improvement in "communicating more effectively with others without taking things personal and becoming emotional when difficulties arise." *Id.*

## II. Events Leading to Scarbrough's Discharge and the March 2007 Memo for Record

On May 12, 2008, Scarbrough was scheduled to open the Administrative Services Office and take the calls of CCG employees unable to work that day, but she arrived ten minutes late. Scarbrough Dep. 33:15-34:13; Smith Aff. ¶ 26. As a result of Scarbrough's tardiness, Gary Stickles ("Stickles"), the Director of Public Services, had to answer at least three phone calls before Scarbrough arrived. Def.'s SMF Ex. A. Stickles Aff. ¶ 4, ECF No. 19-1. Scarbrough asked to leave work early for personal reasons that afternoon. Smith Aff. ¶ 26. The next day, Smith authorized Scarbrough's request to use her Mayor City Manager's day off for Employee Appreciation Week. *Id.* ¶ 27. Scarbrough called in sick on May 15 and 16, 2008. *Id.* ¶ 28.

While Scarbrough was home sick on May 16, she called the office and accused another CCG employee, Cyndi Johnson ("Johnson"), of being rude to Scarbrough's sister when she called the office earlier that day. Scarbrough Dep. 86:3-88:5; Stickles Aff. ¶ 5. According to Scarbrough, Johnson used profanity towards Scarbrough when she tried to talk to Johnson about what Johnson said to her sister. Scarbrough Dep. 88:4-24. After the conversation with Scarbrough ended, Johnson told Stickles that she had not been rude when talking to Scarbrough's

7

sister, and Johnson was visibly upset. Stickles Aff. ¶ 6. Scarbrough called the office again, and another employee answered the phone; Scarbrough demanded in a loud voice to talk to Johnson. *Id.* ¶ 7. Scarbrough's call was transferred to Stickles, and she attempted to continue talking about Johnson, but Stickles informed Scarbrough that he understood that Johnson had not been rude. *Id.* He also told Scarbrough that she should not call the office again that day. *Id.* Stickles told Scarbrough that they would discuss the matter further on Monday when she returned to work. *Id.*

Scarbrough also called Smith regarding her sister's conversation with Johnson, and Smith informed Scarbrough that she had heard the conversation and that Johnson had not been rude. Smith Aff. ¶ 29. Smith noticed that during the phone call Scarbrough slurred her words and sounded intoxicated. *Id.* When Scarbrough continued to talk about Johnson and would not listen to Smith, Smith became upset and used profanity towards Scarbrough. *Id.* Smith informed Stickles of her use of profanity, and Stickles disciplined her for the incident. *Id.;* Stickles Aff. ¶ 11.

The following Monday, Stickles, Smith and Scarbrough met to discuss Scarbrough's phone calls to the office. During the meeting, Scarbrough raised her voice and cursed at Stickles and Smith. Smith Aff. ¶ 30; Stickles Aff. ¶ 8. As a result of this

8

inappropriate behavior, Stickles and Smith decided that Scarbrough should be suspended without pay while permanent dismissal was considered. Smith Aff. ¶ 31; Stickles Aff. ¶ 9. Smith sent Scarbrough a letter outlining Scarbrough's multiple violations of CCG's rules and regulations during her probationary period, and the letter informed Scarbrough that she had until May 23, 2008 to submit a response. Scarbrough Dep. Ex. 12, Letter from D. Hill to C. Scarbrough, May 19, 2008. Scarbrough responded in writing that she had been discriminated against but did not identify how CCG discriminated against her. Scarbrough Dep. Ex. 13, Letter from C. Scarbrough to G. Stickles, May 21, 2008. Stickles scheduled another meeting with Scarbrough and Smith to discuss the situation. Stickles Aff. ¶ 12.

In preparation for the meeting, Stickles reviewed Scarbrough's personnel file. *Id.* ¶ 13. Stickles read a "Memo for Record" prepared by Smith based on a conversation that Smith had with Scarbrough in March 2007 ("March 2007 Memo"). *Id.* The March 2007 Memo documented a conversation between Smith and Scarbrough that was initiated by Scarbrough when she asked Smith if she could talk to her off the record as a friend. Smith Aff. Ex. 3, Memo for Record, Mar. 22, 2007, ECF No. 19-2 [hereinafter March 2007 Memo]. Smith and Scarbrough talked over the telephone one night after work. *Id.* Scarbrough told Smith that

she had an alcohol problem and admitted that she drank five to six glasses of wine every evening and that on weekends and days off she drank all day. *Id.*[4] Smith acknowledged that she would honor Scarbrough's request to keep the conversation off the record, but Smith told Scarbrough that she put Smith "in a bad position because it was [Smith's] responsibility to follow procedures." *Id.* Smith warned Scarbrough that "if she wasn't doing what she [was] supposed to do that [Smith] would have to report this to [the Director] and she would have to go the 'Last chance agreement' route." *Id.* Scarbrough said she understood the policy and the position she put Smith in and promised Smith that she would do whatever was necessary to get herself together. *Id.* Smith placed the March 2007 Memo in a sealed envelope and kept the envelope in a personnel file Smith maintained for Scarbrough separate from Scarbrough's formal personnel file maintained by the Human Resources Department. Smith Aff. ¶ 13.

When Scarbrough showed up for the meeting to discuss her potential dismissal, Stickles immediately smelled alcohol on her breath and believed she may have come to work intoxicated.

---

[4] Scarbrough admits that the conversation took place but denies that she ever discussed the topic of alcohol with Smith. Scarbrough Dep. 183:7-184:15. Scarbrough's claim that CCG fired her based on the perception that she was an alcoholic, however, relies on the existence of the March 2007 Memo to support her contention that CCG regarded her as an alcoholic.

Stickles Aff. ¶ 15. When confronted by Stickles, Scarbrough denied that she had been drinking. Scarbrough Dep. 136:9-21, 137:16-19. Scarbrough also told Stickles that "if I'm on my own time, it's none of [Stickles's] business what I do." *Id.* 214:8-12. Prior to the meeting, Smith and Stickles agreed on three conditions for Scarbrough's continued employment with CCG: (1) that she be placed on probation for one year, (b) that for any absence in the future she would be required to provide a note from a physician explaining why she could not come to work, and (c) that she would refer herself to a drug and alcohol treatment program. Smith Aff. ¶ 33; Stickles Aff. ¶ 14. At the meeting, Stickles presented Scarbrough with a self-referral agreement for the drug and alcohol treatment program and insisted she sign it in order to keep her employment with CCG. Scarbrough Dep. 138:7-139:25; Scarbrough Dep. Ex. 19, Columbus Consolidated Government: Employee Assistance Referral Agreement, May 23, 2008. Scarbrough said she would sign the agreement only under duress, because she denied she had a drinking problem. Scarbrough Dep. 139:13-140:5. Stickles advised Scarbrough that she had until the following Tuesday to think about it and sign the form. Stickles Aff. ¶ 17. Scarbrough does not remember discussing the other two conditions of her continued employment at the meeting or receiving a letter from Stickles outlining the three conditions of her continued employment. Scarbrough Dep.

11

140:8-141:12; *but see* Scarbrough Dep. Ex. 18, Letter from G. Stickles to C. Scarbrough, May 27, 2008.

After the meeting, Scarbrough spoke to the Assistant City Attorney to discuss her pending dismissal, and the Assistant City Attorney reported to Stickles that she smelled alcohol on Scarbrough's breath. Stickles Aff. ¶ 18. The next day, Scarbrough told Stickles that she would not agree to the conditions for her continued employment with CCG. *Id.* ¶ 19. Accordingly, Scarbrough was terminated. Stickles sent Scarbrough a letter confirming his reasons for her termination. Scarbrough Dep. Ex. 18, Letter from G. Stickles to C. Scarbrough, May 27, 2008.

DISCUSSION

**I. Scarbrough's ADA Claims**

Scarbrough argues that CCG violated the ADA by terminating her based on her perceived disability—alcoholism. Scarbrough's discrimination claim is based on her termination that occurred on May 27, 2008, prior to the amendments to the ADA that took effect January 1, 2009. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325 § 8, 122 Stat. 3553, 3559. Congress did not express intent for the amendments to apply retroactively and therefore, they are not applicable here. *See Fikes v. Wal-Mart, Inc.*, 322 F. App'x 882, 883 n.1 (11th Cir. 2009) (per curiam).

Accordingly, the Court analyzes Scarbrough's claim under the ADA as it existed prior to January 1, 2009.

The pre-2009 ADA prohibits an employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a) (2008). To establish a prima facie case of discrimination under the ADA, Scarbrough must demonstrate that (1) she had a disability, (2) she was qualified to perform her job, (3) she was discharged, and (4) her disability was a substantial or motivating factor that prompted CCG to terminate her employment. *Collado v. United States Parcel Serv. Co.*, 419 F.3d 1143, 1152 n.5 (11th Cir. 2005).

Scarbrough must first establish that she has a disability under the ADA. A disability is defined in the pre-2009 ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C) (2008). Scarbrough argues she is entitled to ADA protection because CCG regarded her as disabled. A plaintiff is regarded as disabled if she: "(1) has an impairment that does not substantially limit

a major life activity, but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA." *Hilburn v. Murata Elecs. N. Am.*, 181 F.3d 1220, 1230 (11th Cir. 1999). "As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual." *Id.*

Scarbrough asserts that she is not an alcoholic. She contends that CCG perceived her to be an alcoholic and fired her as a result. Scarbrough identified work as the major life activity that CCG allegedly thought she was unable to perform. Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. 8, ECF No. 24 ("The Defendant perceived the Plaintiff to be unable to perform a major life activity, namely, doing her job."). Scarbrough claims the decision to condition her continued employment on signing the self-referral agreement demonstrates that CCG regarded her as an alcoholic incapable of working within the policies of CCG. CCG's requirement that she sign the self-referral agreement, however, does not show that CCG perceived Scarbrough as unable to do her job. Even if CCG thought that Scarbrough was an alcoholic, CCG expressly gave her a chance to continue her employment. *See Roberts v. Rayonier, Inc.*, 135 F.

14

App'x 351, 356 (11th Cir. 2005) (per curiam) ("We reject [plaintiff's] argument that [defendant's] requirement . . . that he sign the last chance agreement is strong evidence that [defendant] regarded him as disabled. To the contrary, the evidence rebuts any such perception on [defendant's] part. Far from treating him as unable to perform his job, or severely restricted in his job, [defendant] expressly allowed [plaintiff] to continue."). Smith and Stickles continued to view Scarbrough as able to do her job as long as she kept her attendance and other problems under control. *See* Smith Aff. ¶¶ 12, 36; Stickles Aff. ¶ 21. Stickles and Smith were allowed to hold Scarbrough to the same standards as other CCG employees. *See* 42 U.S.C.§ 12114(c)(4) (2008) (providing that an employer can "hold an employee . . . who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the . . . alcoholism of such employee.").

Moreover, even if the evidence did not refute Scarbrough's contention that CCG regarded her as unable to perform her job, the evidence still does not establish that CCG regarded Scarbrough as substantially limited in the major life activity of working. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits'

requires, at a minimum, that [the] plaintiff[] allege [she is] unable to work in a broad class of jobs." *Roberts*, 135 F. App'x at 355. "The inability to perform a single, particular job does not constitute a major limitation in the major life activity of working." *Rossbach v. City of Miami*, 371 F.3d 1354, 1359 (11th Cir. 2004). "Thus, an impairment must preclude—or at least be perceived to preclude—an individual from more than one type of job, even if the job foreclosed is the individual's job of choice." *Id.*

For the purposes of this summary judgment Order, the Court accepts as true Scarbrough's contention that CCG thought Scarbrough was an alcoholic, when in fact, she was not. Scarbrough failed to present any evidence, however, that CCG regarded Scarbrough as being substantially limited in the ability to perform a broad category of jobs. In summary, the record does not reveal any evidence that CCG regarded Scarbrough as unable to work in a broad category of jobs as a result of her perceived alcoholism. The record also does not establish that CCG perceived Scarbrough as unable to perform her own job. For all of these reasons, there is no genuine dispute here—CCG did not regard Scarbrough as disabled for ADA purposes, and CCG is entitled to summary judgment.

Although not expressly argued by Scarbrough in her response brief, the Court rejects any claim by Scarbrough that she had a

record of a disability based on the March 2007 Memo. A plaintiff has a "record of such impairment" if she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Hilburn*, 181 F.3d at 1229. The definition is met "if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." *Id.* Nothing in the March 2007 Memo indicates that any alcohol use by Scarbrough substantially limited the major life activity of working in the past. Further, the language in the March 2007 Memo contradicts any claim by Scarbrough that she was misclassified as having an impairment that substantially limited her ability to work. *See* March 2007 Memo (noting that Smith allowed the conversation to be off the record because Smith "believe[d] [Scarbrough] [could] do it."). Thus, there is no genuine dispute as to this issue. For ADA purposes, Scarbrough had no record of a substantially limiting impairment.

**II. Scarbrough's Privacy Claims**

A. <u>Violation of the Georgia Constitution</u>

Scarbrough claims that CCG violated her right to privacy under the Georgia Constitution by making an unauthorized disclosure of her medical information. "The Georgia Constitution gives its citizens a right to privacy that is broader than that recognized by the United States Constitution."

17

*Padgett v. Donald*, 401 F.3d 1273, 1281-82 (11th Cir. 2005). Courts must carefully scrutinize cases in which an individual's privacy rights may have been infringed. *Id.* at 1282. "The right to privacy protects matters that a reasonable person would consider private." *Id.* The Georgia Supreme Court recognizes that "a patient's medical information, as reflected in the records maintained by his or her medical providers, is certainly a matter which a reasonable person would consider to be private." *King v. State*, 272 Ga. 788, 790, 535 S.E.2d 492, 495 (2000). Accordingly, "the personal medical records of [Georgia's] citizens clearly are protected by that right as guaranteed by [Georgia's] constitution." *Id.*

Although Georgia recognizes a right to privacy of personal medical records maintained by a medical provider, Scarbrough could not reasonably expect the information in the March 2007 Memo to be kept out of her personnel file or from Stickles under the circumstances here. First, the information in the March 2007 Memo was not medical information maintained by her medical provider, but rather information Scarbrough voluntarily disclosed to her employer. Second, while Smith agreed that the conversation would be "off the record," she specifically told Scarbrough that if "she wasn't doing what she [was] supposed to do that [Smith] would have to report this to [the Director] and she would have to go the 'Last chance agreement' route." March

18

2007 Memo. Scarbrough acknowledged that her confession put Smith in a bad position, and Scarbrough said she understood the policy. *Id.* Therefore, Scarbrough did not have a reasonable expectation of privacy regarding the conversation that Smith documented in the March 2007 Memo, and her privacy claim under the Georgia Constitution fails.[5]

B. Unlawful Disclosure under the ADA

Any claim by Scarbrough that a violation of the ADA occurred because Smith disclosed the contents of the March 2007 Memo to Stickles or maintained it in her personnel file also fails. The nondisclosure provisions of the ADA, 42 U.S.C. § 12112(d), and the corresponding regulations, 29 C.F.R. § 1630.14(c), do not apply when the employee voluntarily discloses to the employer the information the employee claims should have been kept confidential or maintained in a separate file. *See Cash v. Smith*, 231 F.3d 1301, 1308-09 (11th Cir. 2000) (concluding that the ADA's provisions against disclosure did not "govern voluntary disclosures initiated by the employee"). To the extent Scarbrough asserts that CCG violated the ADA's nondisclosure provisions by keeping the March 2007 Memo in her personnel file or disclosing it to Stickles, her claim is insufficient as a matter of law.

---

[5] Because Scarbrough cannot establish that CCG violated her right to privacy, the Court declines to evaluate CCG's claim that it is entitled to sovereign immunity.

## CONCLUSION

Based on the foregoing, CCG's motion for summary judgment (ECF No. 18) is granted.

IT IS SO ORDERED, this 19th day of July, 2011.

                                            <u>S/Clay D. Land</u>
                                                CLAY D. LAND
                                        UNITED STATES DISTRICT JUDGE